


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN TAYLOR, et. al.,

      Plaintiffs,

vs.

VISTEON CORPORATION,
a Delaware corporation,

      Defendant.

Case No. 03-75163

Hon. Patrick J. Duggan

---

SOMMERS, SCHWARTZ, SILVER
& SCHWARTZ, P.C.
BY:    DONALD J. GASIOREK (P24987)
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, MI 48075-1100
(248) 355-0300

FOLEY & LARDNER
BY:    PHILIP B. PHILLIPS (P55885)
Local Counsel for Defendant
150 W. Jefferson Ave., Suite 1000
Detroit, MI 48226-4443
(313) 963-9606

FOLEY & LARDNER
BY:    BERNARD J. BOBBER
DAVID J.B. FROILAND
Attorneys for Defendant
777 E. Wisconsin Ave.
Milwaukee, WI 53202-5306
(414) 297-5803 (BJB)
(414) 297-5579 (DJBF)

---

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

LAW OFFICES SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C. 2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

Plaintiffs, Marvin Taylor, et. al., through their undersigned attorney, respectfully ask this Honorable Court to deny the Motion to Dismiss, for the reasons stated in the accompanying Brief.

Respectfully submitted,

SOMMERS, SCHWARTZ, SILVER
& SCHWARTZ, P.C.

By:

DONALD J. GASIOREK (P24987)
Attorney for Plaintiffs
2000 Town Center, Suite 900
Southfield, Michigan  48075-1100
(248) 355-0300

Dated: March 8, 2004

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARVIN TAYLOR**, et. al.,

     Plaintiffs,

Case No. 03-75163

vs.

Hon. Patrick J. Duggan

**VISTEON CORPORATION,**
a Delaware corporation,

     Defendant.

---

SOMMERS, SCHWARTZ, SILVER
& SCHWARTZ, P.C.
BY:    DONALD J. GASIOREK (P24987)
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan 48075-1100
(248) 355-0300

FOLEY & LARDNER
BY:    PHILIP B. PHILLIPS (P55885)
Local Counsel for Defendant
150 W. Jefferson Ave., Suite 1000
Detroit, Michigan 48226-4443
(313) 963-9606

FOLEY & LARDNER
BY:    BERNARD J. BOBBER
DAVID J.B. FROILAND
Attorneys for Defendant
777 E. Wisconsin Ave.
Milwaukee, Wisconsin 53202-5306
(414) 297-5803 (BJB)
(414) 297-5579 (DJBF)

---

## PLAINTIFFS' BRIEF IN RESPONSE TO MOTION TO DISMISS

## TABLE OF CONTENTS

INDEX OF CONTROLLING AUTHORITIES ........................................................................... ii

COUNTER-STATEMENT OF QUESTIONS PRESENTED ........................................................ v

INTRODUCTION ........................................................................................................................ 1

COUNTER-STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT

    I.     THE "TENDER" RULE DOES NOT APPLY HERE ........................................ 5

        A.     The Release Language Does Not Cover Plaintiffs' Claims ........................................................................................ 5

        B.     Public Policy Considerations Flowing From ERISA's Purpose And Language Dictate Rejection of Defendant's Argument ............................................................... 9

    II.     PLAINTIFFS' STATE-LAW CLAIMS ARE NOT PREEMPTED ............. 12

        A.     Plaintiffs' Have Permissibly Pled State-Law Claims In The Alternative To Their ERISA Claim; Defendant Has Failed To Establish That The VSP Is An ERISA "Plan" ................... 12

        B.     Plaintiffs' State-Law Misrepresentation Theories Are Not Within ERISA's Preemptive Sweep ............................................. 14

CONCLUSION ........................................................................................................................... 17

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

## **INDEX OF CONTROLLING AUTHORITIES**

## **CASES**

Adams v Philips Morris, Inc., 67 F3d 580 (1995) ............................................................ 6

Angst v Mack Trucks, Inc., 969 F2d 1530 (3rd Cir. 1992) ........................................... 12

Ayers v United States, 277 F3d 821 (6th Cir. 2002) .................................................... 12

Bannister v Sorenson, 103 F3d 632 (8th Cir. 1996) .................................................... 12

Berlin v Michigan Bell, 858 F2d 1154 (6th Cir. 1988) .................................................. 8

Bittinger v Tecumseh Products, 83 F Supp 2d 851 (ED Mich. 1998) ....................... 5, 9

Brennan v General Motors, 977 F2d 246 (6th Cir. 1992) .............................................. 8

Brooklyn Savings Bank v O'Neil, 324 US 697; 65 S Ct 895; 89 LEd 1296 (1945) ................... 10

Cordoba Chemical v Dept. of Natural Resources, 212 Mich App 144 (1995) ............................. 6

D.A. Schulte, Inc. v Gangi, 328 US 108; 66 S Ct 925; 90 LEd 1114 (1946) .............................. 10

Forbus v Sears Roebuck & Co., 30 F3d 1402 (11th Cir. 1994) ......................................... 15

Ft. Halifax Packing Co., Inc. v Coyne, 482 US 1; 107 S Ct 2211; 96 LEd2d 1 (1987) ......... 12, 14

Goad v Mitchell, 297 F3d 497 (6th Cir. 2002) .................................................................... 1

Hammond v United of Oakland, Inc., 193 Mich App 146 (1992) ....................................... 5

Hogue v Southern Railway, 390 US 516; 88 S Ct 1150; 20 LEd2d 73 (1968) ..................... 10, 11

In Re Delorean Motor Co., 991 F2d 1236 (6th Cir. 1993) ................................................. 1

James v Pirelli Armstrong Tire Corp., 305 F3d 439 (6th Cir. 2002) ................................. 8

Krizin v Cope, Inc., 30 Mich App 268 (1971) .................................................................. 6

Kulinski v Medtronic Bio-Medicus, Inc., 21 F3d 254 (8th Cir. 1994) ............................. 13

Leahan v Stroh Brewery Co., 420 Mich 108 (1984) .......................................................... 5

Lion's Volunteer Blind Industries, Inc. v Automated Group Admin, Inc., 195 F3d 803 (6th Cir. 1999) ................................................................................................ 14

LRL Properties v Metro Housing Authority, 55 F3d 1097 (6th Cir. 1995) ..................... 1

Marks v Newcourt Credit Group, 342 F3d 444 (6th Cir. 2003) ................................... 14, 15

McAuley v IBM, 165 F3d 1038 (6th Cir. 1999) ............................................................ 7, 8

Muse v IBM, 103 F3d 490 (6th Cir. 1996) ............................................................. 7, 8

Oubre v Entergy Operations, 522 US 422; 118 S Ct 838; 139 LEd2d 849 (1998) ................. 9, 11

Perry v PIE Nationwide, 872 F2d 157 (6th Cir. 1989) ............................................. 15

Pilot Life v Dedeaux, 481 US 41; 107 S Ct 1549; 95 LEd2d 39 (1987) ....................................... 10

Raczak v Ameritech Corp., 103 F3d 1257 (6th Cir. 1997)........................................... 11

Samms v Quanex Corp., 99 F3d 1139 (6th Cir. 1996) ................................................. 5

Sandler v New York News, 721 F Supp 506 (SD NY. 1989) ..................................... 15

Seman v FMC Corporation Retirement Plan, 334 F3d 728 (8th Cir. 2003)................................ 6, 9

Sherrod v General Motors Corp., 33 F3d 636 (6th Cir. 1994)........................................... 12, 13

Smith v Pinell, 597 F2d 994 (5th Cir. 1979)............................................................. 11

Smith v Texas Children's Hospital, 84 F3d 152 (5th Cir. 1996) ..................................... 15

Stitt v Mahaney, 403 Mich 711 (1978) ..................................................................... 6

Swierkiewicz v Sorema, 534 US 506; 122 S Ct 992; 152 LEd2d 1 (2002).................................... 1

Swinney v GMC, 46 F3d 512 (6th Cir. 1995) ........................................................... 8

Taylor Group v ANR Storage Co., 452 Mich 561 (1996) ............................................. 5

Trongo v Trongo, 124 Mich App 432 (1983) ............................................................. 6

Varity Corp. v Howe, 516 US 489; 116 S Ct 1065; 134 LEd2d 130 (1996)............................... 6, 8

Wahsner v American Motors Sales, 594 F Supp 991 (ED Pa. 1984) ........................... 11

Wells v General Motors Corp., 881 F2d 166, 176 (5th Cir. 1989), cert den 495 US 923 (1990) 12, 13

Wright v General Motors Corp., 262 F3d 610 (6th Cir. 2001)....................................... 14

Xu v Gay, 257 Mich App 263 (2003) ....................................................................... 6

## STATUTES

29 USC § 1105(b)(1) ............................................................................................ 10

29 USC § 1105(d)................................................................................................. 10

29 USC § 1110(a) ................................................................................................ 10

29 USC § 1144(a) ................................................................................................ 15

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1, 2

Fed. R. Civ. P. 8(c)(2)........................................................................................................ 12

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

## COUNTER-STATEMENT OF QUESTIONS PRESENTED

I.    **SHOULD THE COURT REJECT DEFENDANT'S RELIANCE UPON THE RELEASE LANGUAGE AND THE "TENDER" RULE BECAUSE (A) THE RELEASE LANGUAGE DOES NOT APPLY TO PLAINTIFFS' CLAIMS; AND (B) STATUTORY POLICY CONSIDERATIONS DICTATE REJECTION OF DEFENDANT'S ARGUMENT?**

Plaintiffs answer, "**YES**".

Defendant answers, "**NO**".

II.   **ARE PLAINTIFFS' STATE LAW CLAIMS PREEMPTED WHERE: (A) PLAINTIFFS HAVE PERMISSIBLY PLED THE STATE LAW THEORIES IN THE ALTERNATIVE TO THEIR ERISA CLAIM, AND DEFENDANT HAS FAILED TO ESTABLISH THAT THE VSP IS AN ERISA "PLAN"; AND (B) PLAINTIFFS' STATE LAW THEORIES ARE NOT WITHIN ERISA'S PREEMPTIVE SWEEP?**

Plaintiffs answer, "**NO**".

Defendant answers, "**YES**".

## **INTRODUCTION**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v Sorema, 534 US 506; 122 S Ct 992; 152 LEd2d 1, 10 (2002). "In reviewing a Rule 12(b)(6) motion to dismiss, we treat all well-pleaded allegations in the complaint as true, and we will find dismissal proper only 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief.'" Goad v Mitchell, 297 F3d 497, 500 (6th Cir. 2002). The Court construes the complaint "in the light most favorable to the plaintiff." In Re Delorean Motor Co., 991 F2d 1236, 1240 (6th Cir. 1993). Where, as here, the motion is based upon an affirmative defense (release), the Court will grant the motion only if it is clear on the face of the plaintiff's pleading that the affirmative defense bars the claim. LRL Properties v Metro Housing Authority, 55 F3d 1097, 1107 (6th Cir. 1995).

In this case, Defendant urges that Plaintiffs' ERISA and state-law claims are barred by the language of the release and by the related, "tender" rule; and further, that ERISA preempts the state-law theories.

In fact, construction of the release in a manner consistent with its language and with ERISA's policy considerations yields the conclusion that the release does not bar Plaintiffs' claims. Further, a construction of the release in the manner suggested by Defendant would be contrary to policy considerations found in ERISA itself and related case law. Accordingly, the tender rule does not apply.

As for the ERISA preemption argument, at this point, it is not at all clear that the "VSP" constitutes an ERISA "plan" (an obvious, necessary prerequisite to application of ERISA preemption principles), nor is it clear, as a matter of law, that Plaintiffs' state-law claims fall within ERISA's preemptive sweep.

## COUNTER-STATEMENT OF FACTS

Given that this is a 12(b)(6) motion, the entire set of facts relevant to the motion are to be found in the Complaint itself and its attachments (filed: 12/23/03).

Plaintiffs are former employees of Visteon Corporation, terminated at various times, most of them in April, 2001 (Complaint, p. 7, ¶¶ 57, et. seq.). Upon informing the Plaintiffs that they were terminated, Defendant referred to the Visteon Separation Program (hereinafter: "VSP") (Complaint, Exh. A). Defendant provided each of the Plaintiffs with a written summary of the VSP, entitled "Visteon Severance Allowance Waiver Benefit" (the "Waiver Benefit"), as it specifically applied to each Plaintiff (Example attached to Complaint as Exh. B). Defendant also presented each Plaintiff with a "Waiver and Release Agreement" (Complaint, Exh. C; Complaint, p. 15, ¶ 111). According to the VSP's terms, the amount of each Plaintiff's severance pay would be determined by his or her decision to sign or not sign the Waiver and Release; so that if a Plaintiff signed the Waiver and Release, he or she would receive up to 12 months' of base salary, but if not, only three months'. Id., ¶ 112 (Complaint, Exh. A). Defendant told each Plaintiff that the terms of the severance offer were non-negotiable (Complaint, Exh. C, p. 2; Complaint, p. 15, ¶ 113). Plaintiffs relied upon this representation (that the VSP benefits were non-negotiable) in executing the Waiver and Release Agreement. Id., ¶ 115. Plaintiffs were left with the sole choice between the stated benefits with a waiver and benefits without a waiver. Id., ¶ 116.

In fact, Defendant misrepresented the facts when it stated to these Plaintiffs that the VSP benefits were non-negotiable, as there was, in fact, a choice of negotiating different benefits (Complaint, p. 16, ¶ 118). Defendant did, in fact, proceed to negotiate and give other employees different and/or additional severance benefits than those identified in the VSP benefit packages which Plaintiffs received. Id., p. 16, ¶ 119. Even after the VSP benefits became negotiable,

2

Defendant continued to mislead Plaintiffs and inform them that the VSP benefits were non-negotiable. Id., ¶ 120.

Based upon Defendant's intentional and willful misrepresentations, Plaintiffs allege breach of fiduciary duty under ERISA (Complaint, Count I) and various misrepresentation theories under Michigan law, including fraud (Count II), silent fraud (Count III), innocent misrepresentation (Count IV) and breach of good faith and fair dealing (Count V).

By the terms of the Waiver and Release Agreement, Plaintiffs and Defendant agreed that Plaintiffs, by executing the document, did "not waive or release any rights or claims [Plaintiffs] may have that may arise after this Agreement is signed or if it is not permitted by law, such as workers' compensation claims in some states" (Complaint, Exh. C, at p. 1, ¶ 3). There is no specific waiver of ERISA claims, other than those which may arise from other "separation programs ... that may provide benefits more or less beneficial to [Plaintiffs] than the VSP and the Waiver Benefit ..." Id., ¶ 4 (emphasis supplied). Plaintiffs' claims, however, are not based upon Defendant's institution of another separation "program," but rather, upon Defendant's willful misrepresentation of the negotiability of the benefits available to Plaintiffs, i.e., that there were benefits different from or additional to those set forth in the VSP itself. Defendant assured each of these Plaintiffs that the "terms of VSP, the Waiver Benefit and this Agreement are not negotiable," even though negotiations with other employees for additional separation benefits did take place, and Defendant knew this to be the case. Id., p. 2.

The "VSP" was basically a medium for Defendant to offer severance pay, in varying amounts depending on whether the party employee signed the waiver and release, as the VSP's terms make clear (Complaint, Exh. A). Benefits were determined simply by length of service; salary, and whether or not the affected employee agreed to sign the waiver. Id. Other benefits,

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

including medical, life insurance, pension, etc. were determined with reference to the current benefit programs addressing those types of benefit.   Id., p. 2.   Each Plaintiff received a description of their particular "waiver benefit," including a severance lump sum determined according to base pay, average bonus and service (Complaint, Exh. B).

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

# ARGUMENT

## I.    THE "TENDER" RULE DOES NOT APPLY HERE

### A.    The Release Language Does Not Cover Plaintiffs' Claims

Under the "tender back" rule, the Plaintiff is required to reimburse the defendant for the amount paid in exchange for a release, as a prerequisite challenging a release for fraud. See, Leahan v Stroh Brewery Co., 420 Mich 108, 112-113 (1984); Hammond v United of Oakland, Inc., 193 Mich App 146, 149 (1992) (the plaintiff is not "entitled to retain the benefit of an agreement and at the same time bring suit in contravention of it" [emphasis added]).

On the other hand, the tender rule is inapplicable where the release for which consideration was given does not apply to the Plaintiffs' claims. Taylor Group v ANR Storage Co., 452 Mich 561, 565, 567 (1996); Hammond v United of Oakland, 193 Mich App 146, 150. The cases which Defendant cites presented scenarios in which the release, if valid, and not the product of fraud, plainly barred the Plaintiffs' claims. Samms v Quanex Corp., 99 F3d 1139 (6th Cir. 1996) (unpub'd. opinion; Defendant's Exh. 1); Bittinger v Tecumseh Products, 83 F Supp 2d 851 (ED Mich. 1998). In Samms, for example, the release barred any action or claim by the Plaintiffs for any injuries or damages, "whether known or unknown, sustained or to be sustained, as the result of Quanex's acts, omissions and conduct having occurred up to the present date including, but not limited to, Employee's employment with Quanex and the termination of that employment." There was no possible reading of the release language which was consistent with the Plaintiff's claim that he did not waive claims of which he was unaware at the time of execution of the release. Id.

5

But these cases cannot stand for the proposition that a release must, of necessity, cover all such claims, or that the "tender" rule applies, even if the release will not bear application to the Plaintiffs' claims.

"The intent of the parties expressed in the terms of a release governs its scope." <u>Trongo v Trongo</u>, 124 Mich App 432, 435 (1983); <u>Xu v Gay</u>, 257 Mich App 263, 272 (2003). Where a question of fact exists regarding the scope of a release, that issue must reach the trier of fact. <u>Stitt v Mahaney</u>, 403 Mich 711, 718 (1978). "The scope of a release is governed by its terms and covers only claims intended to be released." <u>Cordoba Chemical v Dept. of Natural Resources</u>, 212 Mich App 144, 150 (1995). Generally, a release waives only claims in existence on the date of the release. <u>Krizin v Cope, Inc.</u>, 30 Mich App 268, 270 (1971).

The Court must determine the release's scope as "expressed in the release" at issue here, not that at issue in the other cases cited by Defendant.

Additionally, our Court of Appeals has stated that where a release waives rights unknown to the releaser at the time of signing the waiver, or is alleged to include conduct "that has not yet occurred, the release must be particularly scrutinized as to the intent of the parties." <u>Adams v Philips Morris, Inc.</u>, 67 F3d 580, 584 (1995). The Court should scrutinize such a release to ensure that the ERISA fiduciary "<u>did not obtain the release in violation of its duties to the beneficiary.</u>" <u>Seman v FMC Corporation Retirement Plan</u>, 334 F3d 728, 732 (8th Cir. 2003) (emphasis added). Given the special relationship that exists it would be especially egregious to permit such conduct.

> The Supreme Court recently held that plan administrators who "participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expenses" fail to act "solely in the interest of the participants and beneficiaries," and violate the duty of loyalty in Section 404(a)(1) of ERISA. <u>Varity Corp. v Howe</u>, ___ US ___, 116 S Ct 1065, 134 LEd2d 130 (1996).

Muse, et al v International Business Machines Corp., 103 F.3d 490, 495 (6th Cir, 1996).

Thus, we turn, first, to the language of the Waiver and Release Agreement (Complaint, Exh. A). The language is of significant breadth, to be sure, but has an express exception: "I do not waive or release any rights or claims I may have that may arise after this Agreement is signed or if it is not permitted by law, such as workers' compensation claims in some states." There is no express waiver of ERISA claims, certainly no waiver of the Defendant's continuing, fiduciary duty. On the contrary, the waiver agreement specifically provides:

> 3.   Rights or Claims That Survive. * * * However, by accepting the Waiver Benefit, I acknowledge that I give up any right I may have to any future recovery from the Company related to my legal claims that arose **prior** to the date I signed this Agreement. * * * (Complaint, Exh. C, at p. 1, ¶ 3).

Within the context of the claims of Plaintiffs, those claim could not be mature or accrue prior to the execution of the agreement, since a required element of all of the claims would be a detrimental reliance on the fiduciary's misrepresentation. See cases cited at p. 8 (infra); including McAuley v IBM, 165 F 3d, 1038, 1043-44 (6th Cir, 1999)(finding fact question existed "whether plaintiffs in fact relied upon [defendant's] representations"). That reliance could only be evidenced by signing the agreement.

Plaintiffs' claims relate to the negotiability of the benefits set forth in the VSP. Defendant told Plaintiffs that the benefits would be nonnegotiable (Exh. C, p. 2), when in fact, Defendant had every intention of negotiating additional, more favorable terms, with employees who refused to sign the offer being made by Defendant. These special negotiations with employees who had already been offered the "non-negotiable" VSP severance program, ended with the execution of a second "waiver and release which maintained the employee on the regular payroll for an extended period of time on "special assignment" which, upon information

7

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

and belief, was totally unsupervised and off-premises, with no reporting responsibility of any kind.[1] Thus, employees could negotiate months of extra salary and benefits, and then accept the full benefits of the VSP. These continuing breaches of fiduciary duty did not "arise" until after Plaintiffs executed the Waiver and Release Agreement, and hence, fall within an express exception to the scope of that Waiver and Release Agreement, by its clear and unambiguous language.

Secondly, and just as importantly, it is precisely Plaintiffs' claim that the release was obtained in violation of Defendant's ERISA duties as fiduciary. A fiduciary/employer violates its statutory duties by providing inaccurate information or by misrepresenting the facts which affect a beneficiary's rights under an ERISA plan. Muse v IBM, 103 F3d 490, 494 (6th Cir. 1996); Berlin v Michigan Bell, 858 F2d 1154, 1162 (6th Cir. 1988); see also, Swinney v GMC, 46 F3d 512, 520 (6th Cir. 1995); Brennan v General Motors, 977 F2d 246, 251 (6th Cir. 1992). Plaintiffs' claim, consistent with Varity Corp. v Howe, 516 US 489; 116 S Ct 1065; 134 LEd2d 130, 151 (1996), is that defendant misrepresented the "likely future of plan benefits," thereby depriving plaintiffs of their opportunity "to make an informed choice about continued participation ..." 134 LEd2d at 143. Defendant not only failed to disclose , but (by stating the VSP was non-negotiable) specifically misrepresented the facts. Not only was Defendant giving serious consideration to sweetening the offer, but in negotiating with other employees, Defendant did offer and provide more lucrative benefits. McAuley v IBM, supra, 165 F3d 1038, 1043; see also, James v Pirelli Armstrong Tire Corp., 305 F3d 439, 453-455 (6th Cir. 2002) (fiduciary breach liability for materially false or inaccurate information concerning future benefits).

---

[1]     A sample copy of a special agreement is being provided as Exhibit "A" in a sealed envelope to maintain confidentiality as required by the terms of the agreement.

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

Therefore, Defendant's breach of its fiduciary duty was the very means Defendant employed to secure Plaintiffs' signatures on the "Waiver and Release Agreement." Seman, 334 F3d, 732.  It would violate ERISA's policy, protective of beneficiaries, to enforce the Waiver and Release Agreement, either directly or through application of the "tender" rule.

Though mindful of this Court's decision on the facts of Bittinger, supra, Plaintiffs respectfully ask this Honorable Court to consider the following portion of their Argument, addressing this point.[2]

### B.   Public Policy Considerations Flowing From ERISA's Purpose And Language Dictate Rejection of Defendant's Argument

In Bittinger, this Court rejected application of Oubre v Entergy Operations, 522 US 422; 118 S Ct 838; 139 LEd2d 849 (1998), (forbidding imposition of the "tender doctrine" in the context of an ADEA claim), in the ERISA context.  Bittinger, 83 F Supp 2d 851, 872, incl. fns. 13-14.  This Court noted, however, that it remained "unclear", post-Oubre, the extent to which the Court's reasoning in Oubre "is applicable to waivers and/or releases in the non-ADEA context."  Id., 83 F Supp 2d, 872, fn. 14.  This Court refused to apply Oubre to an ERISA claim, noting "the lack of explicit guidance from the Sixth Circuit on this issue ..." Bittinger, at 872, fn. 14.

Plaintiffs respectfully submit that the Supreme Court's decision in Oubre, supra, is not based merely upon the special regime for assessing the effect of ADEA waivers, set up by the Older Workers Benefit Protection Act -- the particular scenario before the Supreme Court in Oubre, supra.  The Supreme Court has rejected application of the "tender" rule to Fair Labor

---

[2]    In Bittinger, furthermore, this Court's discussion of this particular issue did not concern the breach of fiduciary duty claims, but appears to have been relegated to the claim for benefits under ERISA.  See, Bittinger, supra, 83 F Supp 2d 851, 869, et. seq.

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD MICHIGAN 48075 • (248) 355-0300

Standards Act claims, for example, even though the FLSA is silent on the subject, and has mandated judicial supervision of such agreements.  <u>Brooklyn Savings Bank v O'Neil</u>, 324 US 697; 65 S Ct 895; 89 LEd 1296 (1945).

ERISA has an anti-exculpatory provision applicable to breaches of fiduciary duty.  Under 29 USC § 1110(a):

> ""Except as provided in §§ 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."

Even without this provision, public policy bars application of the "tender" doctrine to such a claim, given the obvious considerations which underlie the statute (ERISA) more generally.  As the Supreme Court stated in <u>Pilot Life v Dedeaux</u>, 481 US 41; 107 S Ct 1549, 1551; 95 LEd2d 39 (1987):

> "In ERISA, Congress set out to 'protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts.'"

The policy decision regarding application of the "tender" rule does not hinge on the particular statute having express provisions governing releases and the procurement thereof. <u>O'Neil</u>, <u>supra</u>, 324 US 697, 704-707; see also, <u>D.A. Schulte, Inc. v Gangi</u>, 328 US 108, 114-118; 66 S Ct 925; 90 LEd 1114 (1946); <u>Hogue v Southern Railway</u>, 390 US 516; 88 S Ct 1150; 20 LEd2d 73 (1968) (rejecting tender requirement in Federal Employers Liability Act [FELA] cases).  In this case, as in <u>Hogue</u>, to require the return of the benefits which Plaintiffs allegedly received in exchange for the "Waiver and Release Agreement" would be "wholly incongruous

SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
LAW OFFICES
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

with the general policy of [ERISA]," namely, the protection of their ERISA rights from breaches of fiduciary duty. Hogue, supra, 390 US 516, 518.

Indeed, as the Court of Appeals observed in Raczak v Ameritech Corp., 103 F3d 1257, 1269-70 (6th Cir. 1997), the federal courts have applied the policy rationale Hogue to reject tender prerequisites under statutes other than FELA. Citing, Smith v Pinell, 597 F2d 994, 996 (5th Cir. 1979) (Jones Act); Wahsner v American Motors Sales, 594 F Supp 991, 998 (ED Pa. 1984) (Automobile Dealers' Day in Court Act). The point is not whether the statute in question has a specific provision governing releases (as does the OWBPA; Oubre, supra), but rather whether the tender requirement "can legitimately be extended to other remedial statutes," in this case, to ERISA. Id., 1270. Especially would it be inequitable to extend the tender rule to ERISA breach of fiduciary duty claims, where the breach is itself the means by which Defendant procured the release. The Court of Appeals' statement in Raczak with respect to age discrimination claims is equally applicable here:

> "Further, to require plaintiffs to tender-back benefits would be inequitable. A tender-back requirement would deter meritorious ADEA filings. Potential plaintiffs would be faced with the Hobsonian choice of releasing their claims and receiving payments immediately or filing an age discrimination claim that would likely take years to resolve. It is doubtful that few claimants would choose the latter. If plaintiffs had already received release consideration they would have to recover any amounts spent before they could bring a claim. This would bar plaintiffs from litigating their age discrimination claims in court. Rather than a bar to suit, a release should be considered as a factor that would reduce the judgment amount received by a plaintiff upon bringing suit." [103 F3d at p. 1270].

11

## II.   PLAINTIFFS' STATE-LAW CLAIMS ARE NOT PREEMPTED

### A.   Plaintiffs' Have Permissibly Pled State-Law Claims In The Alternative To Their ERISA Claim; Defendant Has Failed To Establish That The VSP Is An ERISA "Plan"

Plaintiffs have pled an ERISA, breach of fiduciary duty claim and, in the alternative, state law misrepresentation claims, arising from the same conduct. This is an entirely permissible pleading technique. Under Fed. R. Civ. P. 8(e)(2), alternative, even inconsistent, theories may be part of the Plaintiffs' Complaint. "A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Id. "Alternative pleadings are not disfavored." Ayers v United States, 277 F3d 821, 829 (6th Cir. 2002).

Defendant jumps all too easily and quickly to the legal conclusion that the "VSP" is an ERISA plan, Plaintiffs respectfully submit. Of course, without an ERISA "plan", there can be no ERISA preemption. See, Bannister v Sorenson, 103 F3d 632 (8th Cir. 1996) (remand required to determine whether the entity providing health care benefits was an ERISA plan before the Court could decide an ERISA preemption issue).

In Sherrod v General Motors Corp., 33 F3d 636, 638-639 (6th Cir. 1994), the Court concluded that a plan under which employees could elect to receive a one-time lump sum payment if they ceased working was not an ERISA plan. The Court stated:

"An employee benefit is regulated by ERISA only if it is administered through a 'plan, fund, or program' established to provide benefits under any of the covered categories. In determining whether a 'plan, fund, or program' exists, a court should focus on whether the employee benefit requires an administrative scheme to execute. See, Ft. Halifax Packing Co., Inc. v Coyne, 482 US 1, 15, 18; 107 S Ct 2211, 2219, 2221; 96 LEd2d 1 (1987); Wells v General Motors Corp., 881 F2d 166, 176 (5th Cir. 1989) (holding the VTEP [Voluntary Termination of Employment Program] is not an ERISA plan), cert den 495 US 923 [1990]; Angst v Mack Trucks, Inc., 969 F2d 1530, 1539 (3rd Cir. 1992) (holding one-time severance benefit as part of buyout plan is not an ERISA plan)."

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

12

Sherrod, 33 F3d at 638 (additional citation omitted). The "pivotal inquiry" is "whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits." Id., 638; quoting, Kulinski v Medtronic Bio-Medicus, Inc., 21 F3d 254, 257 (8th Cir. 1994). "Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." Sherrod, at 638; quoting, Kulinski, 21 F3d at 257.

Similar to the severance payments at issue in Sherrod and Wells, supra (and General Motors' "VTEP" program), this case involves a procedure by which defendant's employees "could elect to receive a one-time lump payment if they ceased working". Sherrod, 33 F3d at 639; Wells, 881 F2d at 176. As in the cases aforecited, the plan is not ongoing (it does not appear), nor is there a need for expert scrutiny of each individual payee's circumstances. Rather, these benefits were automatically calculated, according to their length of service, their salary, and whether they assented to the "Waiver and Release Agreement" (Complaint, Exh. A, p. 1). True, the VSP was sent to these Plaintiffs along with information concerning their separate, regular "Benefits" (id., p. 3), but those "Benefits" were governed by the terms of separates plan(s), and have little to do with the "VSP" itself, per se. This case concerns the "VSP" only.

Each of these Plaintiffs received a statement of their "severance allowance waiver benefit" (Complaint, Exh. B), a simple form with a number filled in based on base pay, average bonus, and years of service. The numbers reflect mechanical determinations which did not require the establishment of an administrative scheme. Sherrod, supra. Defendant's written materials specifically informed Plaintiffs that these were non-negotiable, simple mathematical

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

13

calculations. A one-time payment of severance benefits does not constitute a "plan" under ERISA. Ft. Halifax Packing v Coyne, 482 US 1, 12. Defendant assumed no responsibility "to pay benefits on a regular basis"; and there were "no periodic demands on its assets that create a need for financial coordination and control" -- items characteristic of a true ERISA "plan." Id. Satisfaction of Defendant's duty under the "VSP" involves "only making a single set of payments to employees at the time" Plaintiffs were relieved of their duties. Id. "To do little more than write a check hardly constitutes the operation of a benefit plan." Id.

### B. Plaintiffs' State-Law Misrepresentation Theories Are Not Within ERISA's Preemptive Sweep

Naturally, the defense focuses upon the sheer breadth of ERISA preemption, including a reference to Marks v Newcourt Credit Group, 342 F3d 444, 452 (6th Cir. 2003), with its statement that the Sixth Circuit Court of Appeals "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA" (citations omitted). Defendant, in an equally natural preference, withholds the language which immediately follows the foregoing quotation:

> "However, we will not conclude that state-law claims are preempted where their 'effect on employee benefit plans is merely tenuous, remote or peripheral.' For example, a state-law action only peripherally affects a plan where a plaintiff refers to a clause in the benefit plan summary to support his employment discrimination claim, or where a plaintiff simply makes 'reference to specific, ascertainable damages' by citing a life insurance contract. Wright v General Motors Corp., 262 F3d 610, 615 (6th Cir. 2001). In deciding whether state-law claims are preempted by ERISA, we have focused on the remedy sought by plaintiffs. See Lion's Volunteer Blind Industries, Inc. v Automated Group Admin, Inc., 195 F3d 803, 806 (6th Cir. 1999)."

Marks, 342 F3d at 452-453.

In this case, Plaintiffs' Michigan law claims are based on the Michigan common law of fraud. As in Marks, those claims are not preempted, even though they might relate to ERISA

14

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

insofar as they allege that the Defendant's conduct induced the Plaintiffs to engage in or refrain from certain conduct which has a subject matter relationship to an ERISA plan.  See, Marks, 342 F3d 444, 453.

In Forbus v Sears Roebuck & Co., 30 F3d 1402 (11th Cir. 1994), the Court held that state law fraud claims, alleging that the employer had misrepresented the facts concerning the closing of the facility at which they worked, did not "relate to" the ERISA plan within the meaning of ERISA's preemption provision, 29 USC § 1144(a), even though the plaintiff's damages may have been calculable by reference to the ERISA plan itself.

In Perry v PIE Nationwide, 872 F2d 157, 159 (6th Cir. 1989), fraud, misrepresentation and estoppel allegations were not preempted by ERISA, the plaintiffs claiming that the employer's agents told them that the company would close if they did not participate in the plan. In Sandler v New York News, 721 F Supp 506 (SD NY. 1989), the plaintiff detrimentally relied upon a negligent misrepresentation of the inflated value of his pension, a claim which the Court held not preempted.

In Smith v Texas Children's Hospital, 84 F3d 152 (5th Cir. 1996), the Court concluded that ERISA does not preempt a state-law fraud claim that the plaintiff's employer misrepresented that she would retain her full benefits if she transferred from the parent company to the employer, the ultimate question of liability resting not on the benefits available, but on whether the employer had misled the employee in that respect.

Plaintiffs' claims in the present case are very similar in quality to those made by the Plaintiffs in the cited cases.  Moreover, the Michigan common law of fraud is of general application and pertains to an area of important state concern, which also favors non-preemption of Plaintiffs' Michigan claims.  Perry, supra, 872 F2d 157, 161.

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD MICHIGAN 48075 • (248) 355-0300

## CONCLUSION

For the reasons stated in this Brief, Plaintiffs respectfully ask this Honorable Court to

deny the Motion to Dismiss.

Respectfully submitted,

SOMMERS, SCHWARTZ, SILVER
& SCHWARTZ, P.C.

By:

DONALD J. GASIOREK (P24987)
Attorney for Plaintiffs
2000 Town Center, Suite 900
Southfield, MI  48075-1100
(248) 355-0300

Dated: March 9, 2004

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARVIN TAYLOR**, et. al.,

      Plaintiffs,

vs.

**VISTEON CORPORATION**,
a Delaware corporation,

      Defendant.

Case No. 03-75163

Hon. Patrick J. Duggan

---

SOMMERS, SCHWARTZ, SILVER
& SCHWARTZ, P.C.
BY:   DONALD J. GASIOREK (P24987)
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan 48075-1100
(248) 355-0300

FOLEY & LARDNER
BY:   PHILIP B. PHILLIPS (P55885)
Local Counsel for Defendant
150 West Jefferson Avenue, Suite 1000
Detroit, Michigan 48226-4443
(313) 963-9606

FOLEY & LARDNER
BY:   BERNARD J. BOBBER
DAVID J.B. FROILAND
Attorneys for Defendant
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306
(414) 297-5803 (BJB)
(414) 297-5579 (DJBF)

---

## PROOF OF SERVICE

    ANNETTE M. DeCOSTE, says that she is an employee of Sommers, Schwartz, Silver & Schwartz, P.C., attorneys for Plaintiffs, in the above entitled matter and on the _____ day of March, 2004, she served upon:

Philip Phillips, Esq.
Foley & Lardner
150 West Jefferson, Suite 1000
Detroit, Michigan 48226-4416

copies of the following:  (1) Plaintiffs' Response to Motion to Dismiss; (2) Plaintiffs' Brief in

Response to Motion to Dismiss; and this (3) Proof of Service, by depositing the envelope and its

contents in the United States Mail box located in the lobby of 2000 Town Center, Southfield,

Michigan 48075.

*Annette M. DeCoste*

ANNETTE M. DeCOSTE