**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARVIN TAYLOR, et al.,                    )
                                          )
    Plaintiffs,                           )
                                          )
v.                                        )    Case No. 03-75163
                                          )
VISTEON CORPORATION,                      )    Honorable Patrick J. Duggan
A Delaware Corporation,                   )
                                          )
    Defendant.                            )

F
MAR 1 8 2004
I L E D
CLERK'S OFFICE
DETROIT

---

SOMMERS, SCHWARTZ, SILVER &
SCHWARTZ, P.C.
Donald J. Gasiorek (P24987)
2000 Town Center, Suite 900
Southfield, MI 48075-1100
Phone: (248) 746-4040
Facsimile: (248) 936-2130

Attorney for Plaintiff

FOLEY & LARDNER LLP
Philip B. Phillips (P55885)
150 West Jefferson, Suite 1000
Detroit, MI 48226-4443
Phone: (313) 963-9606
Facsimile: (313) 963-9308

FOLEY & LARDNER LLP
Bernard J. Bobber
David J.B. Froiland
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Phone: (414) 297-5803 (BJB)
Phone: (414) 297-5579 (DJBF)
Facsimile: (414) 297-4900

Attorneys for Defendant

---

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT VISTEON CORPORATION'S**
**MOTION TO DISMISS**[1]

---

[1] Visteon filed "Defendant Visteon Corporation's *Ex Parte* Motion to Extend Page
Limitation for Submitting Reply Brief to Ten Pages" on March 16, 2004. As of the time of this
filing, the Court has not had the opportunity to rule on Visteon's *ex parte* motion. Judge
Duggan's scheduling clerk informed defense counsel that the judge was not available this week,
and suggested that Visteon proceed to file its 10-page reply brief.

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................................................ ii

I.   THE RELEASE LANGUAGE IN THE AGREEMENTS SIGNED BY
     PLAINTIFFS COVERS "ANY AND ALL RIGHTS OR CLAIMS OF ANY
     KIND." ................................................................................................................................. 1

II.  THE TENDER BACK RULE APPLIES AND PROHIBITS THE ASSERTED
     CLAIMS BECAUSE NO PLAINTIFF TENDERED BACK VSP BENEFITS. ............... 5

III. ALL OF PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED. ........................... 8

## INDEX OF AUTHORITIES

**Page(s)**

### CASES

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir. 1976)............................................7

*Bittinger v. Tecumseh Products Co.*, 83 F. Supp. 2d 851 (E.D. Mich. 1998)..................5, 8

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).......................................................6

*Halvorson v. Boy Scouts of Am.*, No. 99-5021, 2000 WL 571933 (6th Cir. 2000) .........5, 7

*Holman v. State of Ind.*, 211 F.3d 399 (7th Cir. 2000) .......................................................9

*Leavitt v. Northwestern Bell Telegraph Co.*, 921 F.2d 160 (8th Cir. 1990) ........................6

*Miller v. GMC*, 845 F.2d 326 (6th Cir. 1988)......................................................................6

*Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998).....................................................6

*Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir. 1989)........................................10

*Samms v. Quanex Corp.*, 99 F.3d 1139 (6th Cir. 1996).......................................................6

*Seman v. FMC Corp. Retirement Plan*, 334 F.3d 728 (8th Cir. 2003) ................................5

*Shahid v. Ford Motor Co.*, 76 F.3d 1404 (6th Cir. 1996)................................................8, 9

*Sherrod v. GMC*, 33 F.3d 636 (6th Cir. 1994)....................................................................9

*Stefanac v. Cranbrook Educ. Cmty.*, 458 N.W.2d 56 (Mich. 1990) ...................................7

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .......................................................................5

### STATUTES

29 U.S.C. § 1110.................................................................................................................6

29 U.S.C. § 1132...............................................................................................................10

### OTHER AUTHORITY

76 C.J.S. *Release* § 20......................................................................................................3

001.1593627.2

**I.      THE RELEASE LANGUAGE IN THE AGREEMENTS SIGNED BY PLAINTIFFS COVERS "ANY AND ALL RIGHTS OR CLAIMS OF ANY KIND."**

In their attempt to avoid the application of the tender back rule, and the dismissal of the case that necessarily flows from that application, Plaintiffs contend that the release language does not even "cover" their claims. This argument fails because it ignores the pertinent language in the release document and requires a nonsensical construction of the release, and because it depends on a misunderstanding of their asserted claims.

The VSP Waiver and Release Agreement (the "Agreement") signed by each Plaintiff clearly sets forth the release language in a specific paragraph entitled: *"Release of Employment Claims."* (Compl. Ex. C, ¶ 2, emphasis in the original)[2] In no uncertain terms, the language effectuates the broadest possible release of "all rights or claims" that the releaser may have against Visteon:

> In consideration of the Waiver Benefit, I waive and release any and all rights or claims of any kind I may have, or my heirs, executors, agents or assigns may have, against Visteon Corporation....

(*Id.*) Temporally, the only plain reading and application of the release language is that the releaser is waiving and releasing all claims of any kind that exist up to and including the moment that the releaser completes his or her signature on the Agreement.

Plaintiffs offer a split-second timing argument that entirely ignores the release language of paragraph 2 of the Agreement. Plaintiffs build their entire argument on a single phrase near

---

[2] Since Visteon filed its motion to dismiss, Plaintiffs filed an Amended Complaint that only adds additional plaintiffs. Because the Amended Complaint restates without change the substantive provisions of the Complaint, Visteon will continue to cite to the original Complaint in this Reply Brief for the Court's case of reference in light of the fact that both sides have cited to the original Complaint in the briefing to date. However, all these arguments apply to the Amended Complaint. Indeed, Plaintiffs stipulated that this motion should be applied to the Amended Complaint. *See* Stipulation to Entry of Order Permitting Plaintiff to File First Amended Complaint, filed on or about March 5, 2004.

the end of paragraph 3 that confirms that the releaser waives a right to future recovery on claims that "arose prior to the date I signed this Agreement." (*Id.* ¶ 3)  This one phrase is not inconsistent with the actual release language of paragraph 2, yet Plaintiffs try to make it much more than it is by arguing that, by reverse implication, this language limits the scope of the release to only those claims that arose at some time prior to 12:00 a.m. on the date that the releaser signed the Agreement.  Therefore, Plaintiffs argue, any claim that only arose upon the signing of the Agreement is not released.

Plaintiffs' novel argument fails for at least four independent reasons.  First, it ignores the release language of paragraph 2 which can only be interpreted as effectuating a release of all claims that may exist up to and through the moment that the releaser completes his or her signature on the Agreement.  That type of release is perfectly consistent with both common practice and common sense.  Indeed, no employer would offer generous severance benefits in exchange for a release that only covered claims that arose up to the end of the day prior to the day the release was signed, and thereby leave itself exposed to the possibility of having to defend any number of claims that the employee can imagine and can argue only accrued as of the day (or the actual moment) he or she signed the release.  The comprehensive release language in paragraph 2 prevents any such bizarre result here.

Second, although Plaintiffs' argument is premised on one phrase found in paragraph 3 of the Agreement, the very first sentence of that paragraph -- which gives the remaining language in that paragraph context and meaning -- reconfirms that claims arising upon the signing of the Agreement are waived and released.  Paragraph 3 begins, "I do not waive or release any rights or claims I may have that may arise after this Agreement is signed...." (*Id.*)  That first sentence of paragraph 3 reconfirms the temporal scope of the release language contained in paragraph 2: *i.e.*, all rights or claims that may exist when the Agreement is signed are waived and released, and

2

only those that arise sometime after signing are not waived. Thus, even under Plaintiffs' theory, their claim arose as each Plaintiff signed the Agreement because that is when each "evidenced" reliance on the alleged misrepresentation. (Pls.' Br. at 7) Such claims are not preserved because the only rights or claims Plaintiffs did not waive or release are those that may arise <u>after</u> the Agreement is signed, not those that arose <u>as</u> they signed it.

Third, the necessary premise for Plaintiffs' timing argument (*i.e.* that they only possessed a waivable right or claim once they signed the Agreement) is wrong. Plaintiffs assert a claim for breach of fiduciary duty. That breach occurred, according to Plaintiffs, when Visteon misrepresented that the VSP benefits were not negotiable when in fact Visteon allegedly had negotiated with some employees. Indeed, a breach of fiduciary duty claim is fundamentally based on some action or inaction of the fiduciary, not the plan participant. The alleged breach in this case occurred when Visteon handed each Plaintiff the Agreement which contains the allegedly false statement regarding non-negotiability. At that point, each Plaintiff had a "right" or a "claim," namely, the most important element (a breach) in a cause of action for breach of fiduciary duty. Even if all the elements of a full cause of action had not yet ripened, for example because some plaintiff arguably had not yet relied or otherwise suffered damage, this critical element of breach is undeniably a "right" or "claim." That right or claim was waived when each Plaintiff signed the Agreement.[3]

But even if Plaintiffs could show that they needed to detrimentally rely on the alleged misrepresentation before having any "right or claim" under the law, any alleged reliance must have occurred prior to the signing of the Agreement. The gravamen of the Complaint is that the

---

[3] "An existing obligation or contract right, although executory and in some respects dependent on contingencies that may never happen, may be released, and rights which have not matured and expectant interests may be released." 76 C.J.S. *Release* § 20 (1994).

3

Plaintiffs missed an opportunity to attempt to negotiate some better benefits because they relied on the statement that the terms of the VSP and the Agreement were not negotiable. Any alleged detrimental reliance occurred, if ever, during the entirety of the (up to) 45-day consideration period, not just when each Plaintiff signed the Agreement. During that consideration period, each Plaintiff had in hand the VSP, the Waiver Benefit, and the Agreement, and was advised by Visteon to consult with an attorney prior to signing. (Compl. Ex. C, p. 2 of 2) If there was detrimental reliance, it must have begun when the Agreement was provided and the alleged misrepresentation was published and began discouraging negotiation attempts. The signing of the Agreement simply was the end of the alleged detrimental reliance, not the start of it. In fact, the signing was not even necessary to a claim of detrimental reliance because persons who chose not to sign, and who therefore accepted the smaller package of VSP benefits, also may have relied to their (alleged) detriment by not attempting to negotiate. Thus, Plaintiffs' "rights and claims" arose before they signed the Agreement, those "rights and claims" are not dependent on the act of signing the Agreement, and therefore all those "rights and claims" were released by operation of that Agreement.

Finally, Plaintiffs get nowhere arguing that "continuing breaches of fiduciary duty" that allegedly arose after Plaintiffs signed their Agreements are actionable. (Pl.s' Br. at 8) This notion flies in the face of common sense, and contradicts Plaintiffs' earlier argument that their signing of the Agreement was required to create a claim because that was the detrimental reliance. Anything Visteon allegedly did regarding the VSP after Plaintiffs signed their Agreements had no effect on Plaintiffs – Plaintiffs did not sign or consider new Agreements, and they did not forego any theoretical opportunity to negotiate better benefits because no new offer was on the table for their consideration after they signed their Agreements. In fact, the "future breach" argument suggested by Plaintiffs is contradicted by the express language in their

001.1593627.2

4

Agreements which confirms their understanding that the Company may provide new or more benefits to others in the future and "I will not have any rights under any new program." (Compl. Ex. C, ¶ 4) In sum, the breach Plaintiffs allegedly suffered that is theoretically actionable occurred before each signed the Agreement, and as such any right or claim regarding that breach is released by the unambiguous terms of the Agreement.

## II.    THE TENDER BACK RULE APPLIES AND PROHIBITS THE ASSERTED CLAIMS BECAUSE NO PLAINTIFF TENDERED BACK VSP BENEFITS.

Because the claims asserted in the Complaint were in fact encompassed by the waiver and release, the claims can only be asserted after the consideration received by the Plaintiffs for the release is tendered back to Visteon. *Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 871 (E.D. Mich. 1998). This rule of law is perfectly clear in this circuit, and applies in the context of claims brought for alleged violations of ERISA. *Halvorson v. Boy Scouts of Am.*, No. 99-5021, 2000 WL 571933 (6th Cir. May 3, 2000) (unpublished   attached as Ex. 3 to opening brief). Plaintiffs fail to distinguish the cases cited by Visteon in its opening brief or to cite any contrary law.[4] Instead, Plaintiffs essentially ask this Court to ignore or overrule its prior decision in *Bittinger* in which this Court held that the tender back rule applies to ERISA claims. The argument should be rejected because Plaintiffs do not offer this Court any compelling justification to change the law.

---

[4] Plaintiffs rely on the Eighth Circuit case of *Seman v. FMC Corp. Retirement Plan,* 334 F.3d 728 (8th Cir. 2003) for the proposition that the Court should scrutinize a release of claims against a fiduciary. (Pl.s' Br. at 6) In its brief discussion of the release issue, the *Seman* court specifically raised a concern about "the clarity of the release language," 334 F.3d at 731-32, a concern not raised in the Complaint in this action. The Sixth Circuit may or may not adopt a similar notion someday, but *Seman* adds nothing to the analysis here because it confirmed that a release of claims under ERISA given in exchange for severance benefits may be enforced, and because that case does not involve application of the tender back rule that is firmly established in this circuit. Similarly, *Varity Corp. v. Howe,* 516 U.S. 489 (1996) is inapposite because it did not involve the enforcement of a signed release or waiver.

Plaintiffs' attempted analogy to the FLSA context and the *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945) case is unpersuasive. The Supreme Court concluded in *Brooklyn Savings* that the FLSA prohibited private releases of certain FLSA statutory rights (like the right to a minimum wage), but at least one court faced with an argument similar to Plaintiffs rejected the analogy to the ERISA context, concluding that nothing in the language or legislative history of ERISA suggests any limitation on private settlements, and affirmatively noting that "the purposes behind ERISA and the FLSA differ." *Leavitt v. Northwestern Bell Tel. Co.,* 921 F.2d 160, 162 (8th Cir. 1990).

*Oubre* is also inapplicable. That decision is based on the ADEA and its unique requirements for enforceability of releases of age discrimination claims. Plaintiffs contend that *Oubre* has far-reaching effects in other areas of the law outside the ADEA, but they fail to cite a single case in this jurisdiction that supports the contention.

Plaintiffs also imply that ERISA's § 410 (29 U.S.C. § 1110(a)) bars a release of claims against an ERISA fiduciary or somehow affects the analysis and application of the release at issue in this case. (Pl.s' Br. at 10) No wonder Plaintiffs never develop the notion in their brief – it is all smoke and no fire. Courts uniformly reject the argument that ERISA § 410 bars the release of pending claims against an ERISA fiduciary. *See, e.g., Leavitt,* 921 F.2d 160; *Samms v. Quanex Corp.,* 99 F.3d 1139 (6th Cir. 1996) (unpublished – copy attached to initial brief as Ex. 1); *Miller v. GMC,* 845 F.2d 326 (6th Cir. 1988) (unpublished – copy attached).[5]

---

[5] Plaintiffs' passing reference to 29 U.S.C. § 1110(a) demonstrates their strategy in opposition to Visteon's motion to dismiss – *i.e.,* to simply dabble in a variety of concepts or arguments, even if the arguments are undeveloped and unsupported by on-point case law, apparently in the hope that one may stick. In this example, Plaintiffs cite no case holding that § 410 bars a release of an ERISA fiduciary, but they wrongfully imply that this is the law.

6

Plaintiffs' general public policy arguments seeking to carve an ERISA exception to the tender back rule are also uncompelling. The overriding public policy at issue here is the law's strong favor for the full and final settlement of disputes. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). The law should encourage employers to pay terminated employees severance benefits instead of stockpiling those monies to defend the countless claims that might be pursued by separated employees in the absence of full and enforceable releases. The VSP informed the employees that Visteon made this precise choice, and for that reason Visteon's substantial severance payments were conditioned upon the employees' full release of any and all claims, and the employees' unequivocal promise "not to start any proceedings of any kind against the Company relating in any way to my employment or the separation of my employment." (Compl. Ex. C, ¶ 2) These Plaintiffs have now done exactly what they promised not to do. The law permits Plaintiffs to attempt to assert claims that have been released by asserting that the release does not bar their claims because it was procured by fraud. However, they must first tender back the benefit of the bargain. *Stefanac v. Cranbrook Educ. Cmty.*, 458 N.W.2d 56, 60 (Mich. 1990); *Halvorson, infra* (even if plaintiff alleges release is invalid, plaintiff must tender back consideration before pursuing ERISA claims). Otherwise, their retention of benefits constitutes a ratification of the Agreement, even if it was obtained by fraud. *Id.* Any other ruling would severely undermine the strong public policy in favor of settlement of claims, and would grant Plaintiffs the windfall of keeping the severance benefits totaling hundreds of thousands of dollars, and sue anyway.[6]

---

[6] Plaintiffs attempt to supplement their pleadings with new evidence, specifically an alleged "sample copy of a special agreement," and they assert that the agreement substantiates their claim. Specifically, Plaintiffs argue that the agreement attached as Exhibit A to their brief proves that "employees could negotiate months of extra salary and benefits, and then accept the full benefits of the VSP." (Pl.s' Br. at 8) This is just not true. Even if the Court assumed for the sake of argument that the employee identified in the so-called special agreement was offered the (cont'd)

In sum, there is no good basis in law or reason for this Court to make new law and overrule or even sidestep *Bittinger*. None of the smoke in Plaintiffs' opposition brief changes the dispositive point: The tender back rule applies to ERISA claims that have been released. Even if Plaintiffs claim that the release should not be enforced for some reason, they must return the generous benefits they took in exchange for their waiver of claims and their covenants not to sue. Because Plaintiffs have not tendered back the benefits, they have ratified the releases and their claims cannot proceed.

## III.   ALL OF PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED.

Plaintiffs allege that the VSP, the Waiver Benefit and the Waiver and Release Agreement is "an employee benefit plan subject to ERISA." (Compl. ¶ 123) Defendant agrees. In fact, the VSP is nearly identical in all material respects to the severance plan that the Sixth Circuit analyzed in *Shahid v. Ford Motor Co.,* 76 F.3d 1404 (6th Cir. 1996).[7] Visteon discussed the *Shahid* case prominently in its opening brief, but the Plaintiffs ignore it entirely without even a passing attempt to distinguish it. The *Shahid* case squarely controls the ERISA plan analysis here, and Plaintiffs did not even attempt to disagree. Thus, the VSP is an ERISA plan.

---

VSP (which certainly is not apparent or inferable from the face of the agreement or any allegations in Plaintiffs' Complaint), and further assumed that the employee engaged in some negotiations (which likewise is not apparent or inferable), nothing about the agreement states that the employee can "accept the full benefits of the VSP" as Plaintiffs assert. The agreement does not even mention the VSP. At most, the agreement shows that the employee negotiated a later employment termination date. It does not indicate that he will receive any VSP benefits, or that he negotiated any VSP benefits, and therefore it would not support Plaintiffs' claims. Thus, even this new document which Plaintiffs offer as evidence of some fiduciary breach shows no such thing.

[7] In *Shahid*, the Sixth Circuit held that Ford's "VTP" severance plan was an ERISA plan because it included a substantial payment, reemployment assistance, continuance of medical and life insurance coverages and a retirement "grow-in" provision. 76 F.3d at 1410. These same elements are present in the VSP, and compel the same conclusion here.

Plaintiffs' new argument -- that maybe the VSP is not an ERISA plan after all -- is pure whimsy. Their argument: 1) contradicts their allegation that the VSP is an ERISA plan; 2) entirely ignores the controlling holding of *Shahid*, and 3) is premised on a partial view of the VSP. Regarding this last point, Plaintiffs cite cases, including *Sherrod v. GMC*, 33 F.3d 636 (6th Cir. 1994), in which severance programs were deemed not to be ERISA plans. In those cases, the benefits provided consisted of a one-time lump sum payment that was calculated as a purely mechanical determination, and therefore there was no need for ongoing administration. The VSP, however, is more than this. In addition to the fact that it was applied over time and was not a one-time event, the VSP contains several benefits in addition to a severance payment that require the employer to administer it on an ongoing basis. Plaintiffs' attempt to characterize it as just a one-time payment plan entirely ignores the medical and life insurance benefits that flowed through the VSP. Additionally, the fundamental premise of Plaintiffs' entire case is that Visteon "misrepresented" that it was actually negotiating different VSP benefits with some employees – an allegation that, if true, confirms some ongoing administration of the plan.[8] The one-time payment cases simply cannot apply here because Plaintiffs' entire case is based on the proposition that Visteon exercised ongoing, discretionary decision making and administration regarding the VSP benefits.

Plaintiffs have not rebutted the reality that every aspect of this case directly relates to the terms or administration of an ERISA plan (the VSP). The alleged misrepresentation is contained

---

[8] Plaintiffs' attempt to argue out of both sides of their mouths cannot be dismissed merely as pleading in the alternative. While alternative pleading is envisioned by the federal rules, a party must make clear in its pleading that it is alleging claims in the alternative. *Holman v. State of Ind.*, 211 F.3d 399, 407 (7th Cir. 2000) (to plead in the alternative, plaintiff must use a formulation from which it can be reasonably inferred that this is what they are doing). Here, Plaintiffs do the exact opposite: they specifically incorporate into each of their state law claims the other allegations in the Complaint, including the allegation that the VSP is an ERISA plan. (*See, e.g.,* Compl. ¶¶ 130, 137, 145 and 151)

9

in the Waiver and Release Agreement, the alleged misrepresentation relates to the scope of benefits under the VSP, and the Company allegedly breached its ERISA duties by negotiating additional plan benefits for some employees without telling others. Of course these claims "relate to" the ERISA plan – they cut to its very essence.

The cases cited by Plaintiffs on page 15 of their brief are all distinguishable. In all of those cases, the alleged misrepresentation did not concern the actual terms and benefits of the ERISA plan as does the alleged misrepresentation in this case. In those cases, the actual benefits available under some plan was an issue tangentially related to the misrepresentation, but was not the gist of the misrepresentation. *E.g., Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir. 1989) (alleged misrepresentation concerned the future stability of ownership of the employer). Because the misrepresentation alleged in this case goes to the very heart of the terms and administration of the plan, these cases cited by Plaintiffs do not change the conclusion that Plaintiffs' state law claims are preempted.

For all the reasons stated, Defendant Visteon Corporation requests that this Court grant Defendant's Motion to Dismiss, and order that all of Plaintiffs' claims are dismissed with prejudice, and award to Defendant its costs and fees incurred as allowed by law (29 U.S.C. § 1132(g)).

Respectfully submitted,

FOLEY & LARDNER LLP

By: *Philip B. Phillips*

Philip B. Phillips (P55885)
150 West Jefferson, Suite 1000
Detroit, MI 48226-4443
Phone: (313) 963-9606
Facsimile: (313) 963-9308

March 18, 2004

10

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARVIN TAYLOR, et al.,                    )
                                          )
    Plaintiffs,                       )
                                          )
v.                                        )    Case No. 03-75163
                                          )
VISTEON CORPORATION,                      )    Honorable Patrick J. Duggan
A Delaware Corporation,                   )
                                          )
    Defendant.                        )

---

SOMMERS, SCHWARTZ, SILVER &
SCHWARTZ, P.C.
Donald J. Gasiorek (P24987)
2000 Town Center, Suite 900
Southfield, MI 48075-1100
Phone: (248) 746-4040
Facsimile: (248) 936-2130

Attorney for Plaintiff

FOLEY & LARDNER LLP
Philip B. Phillips (P55885)
150 West Jefferson, Suite 1000
Detroit, MI 48226-4443
Phone: (313) 963-9606
Facsimile: (313) 963-9308

FOLEY & LARDNER LLP
Bernard J. Bobber
David J.B. Froiland
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Phone: (414) 297-5803 (BJB)
Phone: (414) 297-5579 (DJBF)
Facsimile: (414) 297-4900

Attorneys for Defendant

---

### PROOF OF SERVICE

STATE OF MICHIGAN    )
                     ) ss
COUNTY OF WAYNE    )

    Rosalyn Blakley, being first duly sworn, deposes and states that on March 18, 2004, she

served a correct copy of **REPLY BRIEF IN SUPPORT OF DEFENDANT VISTEON**

**CORPORATION'S MOTION TO DISMISS and this PROOF OF SERVICE** upon:

XXX.XXXXXX.XA

Donald J. Gasiorek
**Sommers, Schwartz, Silver &**
   **Schwartz, P.C.**
2000 Town Center, Suite 900
Southfield, MI  48075-1100

by enclosing said document(s) in an envelope properly addressed to Mr. Gasiorek with postage

prepaid and depositing said envelope in the United States mail, Detroit, Michigan.

Rosalyn Blakley

Subscribed and sworn to before me
this 18th day of March, 2004.

Lynn K. Nelson, Notary Public
Macomb County, Michigan
Acting in Wayne County
Expires March 17, 2007

2

XXX.XXXXXX.XA

Attachment
1

**(Cite as: 845 F.2d 326, 1988 WL 38965 (6th Cir.(Mich.)))**
▷

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Jerome MILLER, Donald Ewers, Ferdinand Pfeifer,
Individually and as
Representative of a class of individuals similarly
situated, Plaintiffs-
Appellants,
v.
GENERAL MOTORS CORPORATION, a foreign
corporation, Defendant-Appellee.

No. 87-1493.

April 27, 1988.

E.D.Mich.

AFFIRMED.

On Appeal from the United States District Court for
the Eastern District of Michigan.

Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges and CONTIE, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

**\*1** Plaintiffs filed suit individually and as representatives of a class of workers who were transferred from the General Motors Corporation (GM) to Electronic Data Systems Corporation (EDS). In their complaint, plaintiffs allege that they were forced to accept a less generous employee benefits package as a result of their transfer to EDS, a wholly-owned subsidiary of defendant, GM. Plaintiffs brought claims for breach of contract, fraudulent misrepresentation, and breach of fiduciary obligation under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. Defendant removed the case to federal court and filed a motion for summary judgment on the ground that plaintiffs had signed a release of all claims arising from their transfer

from GM to EDS. The district court granted the defendant's motion for summary judgment with respect to three of the four plaintiffs, finding that they had signed a valid release discharging GM from all claims arising from transfer of the employee from GM to EDS. We agree and affirm.

I.

The following facts as set forth in the district court's opinion are undisputed. On September 21, 1984, GM announced to its shareholders its intention to acquire EDS. On October 18, 1984, the acquisition of EDS was consummated following the approval of the proposal by the shareholders of GM. In November, 1984, GM employees involved in EDS activities were advised that effective January 1, 1985, they would be transferred to EDS. As a result, the former GM employees would no longer be active participants in the benefit plans of GM; however, they would retain their vested and accrued benefits under the GM plans and would be immediately eligible to participate in the EDS benefit program.

In February, 1985, the employees who were transferred from GM to EDS were offered an opportunity to participate in the stock incentive plan of EDS. Pursuant to the terms of the offer, employees were permitted to purchase not more than 1,000 shares of GM Class E common stock at the rate of ten cents per share. The stock purchase agreement included an express release of all claims against GM and EDS arising from the employees' transfer to EDS, including any claims for breach of contract:

*Buyer's Release.* In consideration of the grant and sale of shares of Class E stock pursuant to this Agreement, Buyer hereby releases and forever discharges GM and the Company [EDS], their officers, directors and employees from all claims, demands and causes of actions, known or unknown, which Buyer may have based upon or relating to his transfer under any state or federal law or regulation relating to employment and any claims for breach of employment contract, either express or implied. Buyer further agrees not to institute any proceeding, suit, action at law or in equity against GM, the Company [EDS] or their officers, directors, agents, employees, or stockholders, based on any of the matters covered by the release set forth above.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Restricted Stock Agreement ¶ 6. The plaintiffs were presented with a copy of the stock agreement on February 25, 1985. They were required to respond by March 4, 1985. Three of the four plaintiffs in the instant action, Jerome Miller, Donald Ewers, and Ferdinand Pfeifer, elected to participate in the stock incentive program. The market value of these Class E shares was considerably higher than the purchase price at the time of the stock agreement; however, because of the various restrictions on the stock purchase, the shares vest at ten percent a year and will not be available for sale until the year 1997. Plaintiff Pfeifer paid $47 for 470 shares of GM Class E stock. According to defendant, the current value of those shares is approximately $45,000. Plaintiff Ewers paid $100 for 100 shares which are now worth approximately $96,000. Plaintiff Miller paid $78.50 for 785 shares with a current total value of over $75,000.

**2 On August 16, 1985, Miller, Ewers, Pfeifer, and Kenneth Wittl filed suit against GM in state court claiming breach of contract, breach of obligation to provide severance pay, and fraudulent misrepresentation. Essentially, plaintiffs claim that, as employees of EDS, a wholly-owned subsidiary of defendant, GM, they were entitled to the identical benefits received by employees of GM. In its motion for summary judgment, the defendant submitted a memorandum which was provided to the plaintiffs prior to their transfer to EDS, outlining the differences between the benefit plans of EDS and GM. GM also attached the affidavits of the plaintiffs in which they acknowledged that:   (1) each had the choice of transferring to EDS or accepting a special separation allowance of up to one-year's salary; (2) each plaintiff was furnished with documents on February 24, 1985, advising that a precondition of participation in the EDS incentive plan was the release of GM from all liability arising from the transfer of employment; and (3) each plaintiff had the option of accepting or declining participation in the EDS employee stock incentive plan. In response to GM's motion for summary judgment, plaintiffs argued that the release was not knowingly executed by them and it was given without consideration. They also claimed that the release was void under ERISA and was contrary to the terms of the EDS employees' stock incentive plan. In granting GM's motion for summary judgment, the district court found that the plaintiffs knew or should have known that their participation in the stock plan entailed the release of claims against GM. The court also found that the plaintiffs received ample consideration in the form of shares of Class E common stock which they

were allowed to purchase at a nominal rate. Finally, the court concluded that the release operated to "insulate defendant" from any liability with respect to alleged violations of ERISA and the separation allowance plan.

II.

On appeal, plaintiffs raise several arguments contesting the validity of the release which they signed barring any claims against GM arising from their transfer to EDS. We address each of the arguments *seriatim.*

Plaintiffs claim that the release was invalid under Michigan law because it was not "fairly and knowingly" made. In support of their argument, plaintiffs cite to the Michigan Supreme Court decision in *Denton v. Utley,* 350 Mich. 332, 86 N.W.2d 537 (1957). In *Utley,* the plaintiff had been involved in an automobile accident which resulted in significant damage to his car. The plaintiff sent a letter to the other driver's insurance company requesting that they reimburse him for the $50 deductible on his own collision insurance. On the back of the check which the insurance company sent to the plaintiff, a general release was printed purporting to discharge any and all claims arising from the accident. The plaintiff endorsed the check in the space provided below the general release. Subsequently, the plaintiff claimed to experience injuries which he attributed to the accident and filed suit for damages.

**3 The Michigan Supreme Court held that the general release was invalid based on a mutual mistake of fact on the part of the parties to the release. The court found that the plaintiff was not aware of his latent injuries at the time he signed the check, and that he did not intend to extinguish all his claims for the "trifling sum" of $50. *See* 350 Mich. at 346. In general terms, the Michigan Supreme Court stated that, in order to be valid, a release must be "fairly and knowingly" made. As examples of unfairness, the court cited to cases wherein releases were found to be invalid because the party was "suffering from shock and dazed" at the time of the release, or because the party was under the influence of drugs, or where there was evidence of fraud, mistake, duress, or unconscionable advantage taken. *Id.* at 343. With respect to the knowledge requirement, the court stated, "A releaser who believes he is without personal injuries, or that he has certain minor injuries only, and who, secure in his belief, executes a general release, will not be bound by it if other and more serious injuries are discovered at a later period." *Id.* at 343-44 (citations omitted).

845 F.2d 326 (Table)                                                                                               Page 3
(Cite as: 845 F.2d 326, 1988 WL 38965, **3 (6th Cir.(Mich.)))

In the instant case, plaintiffs claim that the release was not "fairly and knowingly" made since they were not given adequate time to consider the effects of the "general, boiler plate release." This argument is without merit. According to the admissions in their affidavits, plaintiffs had over a week to consider the terms of the release which were contained in the stock purchase agreement. Moreover, contrary to the plaintiffs' characterization of the "general boiler plate" language of the release, we find that the language is clear and unambiguous and specifically informed plaintiffs that they were waiving all claims arising from their transfer to EDS by signing the stock agreement which included the release.

Plaintiffs also argue that the release is invalid because it was not supported by adequate consideration. This argument is unpersuasive. Plaintiffs quote from the first paragraph of the EDS stock incentive plan which states in part:

The purpose of the plan is to provide corporate officers and key employees of [EDS] and its subsidiaries ... with a strong incentive for individual creativity and contribution to insure the future growth of the company. The plan is not designed to benefit persons who may be satisfied solely with past accomplishments, but, rather, it is designed to reward those who are deeply committed to a career with the company [EDS] and whose ability and diligence permits such persons to make important contributions to the success of the company by enabling such persons to acquire shares of Class E common stock ... in the manner contemplated by the plan.

**4 Plaintiffs also quote from the introductory page of the restricted stock agreement which provides in part:

In recognition of your prior valuable service and experience with [GM] and your importance to the success of the new alliance between [EDS] and GM, the 1984 stock incentive plan committee has approved a special recognition grant to you pursuant to the 1984 [EDS] stock incentive plan.

Relying on these generalized statements, plaintiffs argue that the stocks they received pursuant to the restricted stock agreement were in exchange for their past services at GM and the future services which they will perform for EDS and, therefore, were not in exchange for the release which was contained in the agreement. We disagree. The release which is contained in the restricted stock agreement specifically provides, "*in consideration of the grant and sale of*

*shares of Class E stock pursuant to this agreement,* buyer hereby releases and forever discharges GM and the company...." This language explicitly states that the shares of Class E stock which the plaintiffs received pursuant to the restrictive agreement were given in consideration for their release of potential claims against GM and EDS arising from their transfers. Moreover, plaintiffs admit that "the market value of these shares is considerably higher than the purchase price." (Plaintiffs' brief at 5). Thus, it is obvious that the consideration given in exchange for the releases in this case is substantially more than the "pittance" or "trifling amount" involved in *Denton v. Utley.*

Plaintiffs also attempt to argue that the release is void as against public policy because it purports to limit their statutory rights under ERISA. Specifically, plaintiffs cite to section 410(a) of ERISA which provides in part:

[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability from any responsibility, obligation, or duty under this part shall be void as against public policy.

29 U.S.C. § 1110. Plaintiffs' reliance on this section is misplaced. Section 410(a) is contained in Part IV which pertains to fiduciary duties owed by trustees and administrators to the *plan.* See 29 U.S.C. § 1109. Thus, section 410 of ERISA was enacted to preclude a fiduciary from being reimbursed from the employee benefit trust funds for a personal loss incurred by the trustee or administrator as a result of a breach of fiduciary duty. This section does not prohibit an employer from obtaining a release from employees in consideration of a grant of stock.

Finally, plaintiffs argue that the district court was premature in granting the defendant's motion for summary judgment because plaintiffs had not completed their pretrial discovery. The information sought by the plaintiffs, however, does not relate to the issue of the release which is the determinative issue in this case. Given the undisputed evidence in the record, including the affidavits of the plaintiffs themselves, we find that the defendant was entitled to judgment as a matter of law based on the written releases signed by the plaintiffs. Accordingly, the judgment of the district court below is AFFIRMED.

CONTIE, Senior Circuit Judge, dissenting.

**5 The majority fails to consider appellants'

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

argument that the Supreme Court's decision in *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945), and this court's decision in *Runyan v. National Cash Register Corp.,* 787 F.2d 1039 (6th Cir.), *cert. denied,* 107 S.Ct. 178 (1986), support the finding of a public policy exception to the defense of release which is grounded in case law. I am persuaded by this argument that, similar to the Fair Labor Standards Act (FLSA) and the Age Discrimination in Employment Act (ADEA), the Employee Retirement Income Security Act (ERISA) is protective legislation whose purpose cannot be furthered if we recognize the defense of release in this case. Accordingly, I dissent.

In *O'Neil,* the Supreme Court held that the respondent's release of all claims and damages under the FLSA, given at the time he received payment of overtime compensation due under the FLSA, was not a defense to an action subsequently brought solely to recover liquidated damages. The Supreme Court reasoned that

a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy.... Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.... [T]he question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute....

... In the absence of evidence of specific Congressional intent, it becomes necessary to resort to a broader consideration of the legislative policy behind this provision as evidenced by its legislative history and the provisions in and structure of the Act.

*Id.* at 704-06 (citations and footnote omitted).

The Supreme Court went on to hold that the legislative history of the FLSA "shows an intent on the part of Congress to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Id.* at 706. The Court concluded that the same policy considerations which prohibit waiver of basic minimum and overtime wages under the FLSA [FN1] likewise prohibit waiver of the employees' right to liquidated damages. *Id.* at 707.

FN1. The Court did not cite authority for the proposition that waiver of basic minimum and overtime wages is forbidden, it simply stated that the parties did not argue otherwise.

Shortly thereafter, in *D.H. Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946), the Supreme Court extended its holding in *O'Neil.* In *Gangi,* the Court held that the purpose of the FLSA requires that the remedy of liquidated damages under the FLSA cannot be bargained away by bona fide settlements of disputes over coverage of the Act. *Gangi,* 328 U.S. at 114-18.

**6 More recently, in *Runyan,* this court was willing to extend the rationale enunciated in *O'Neil* to waivers under the ADEA. The ADEA incorporates the enforcement provisions of the FLSA. In *Runyan,* the court decided that under particular circumstances, for example a bona fide factual dispute between the parties--a circumstance not involved in *O'Neil* or *Gangi,* employers and employees may negotiate a valid release of ADEA claims. *Id.* at 1044. The court, however, went on to state: "We recognize, however, that in accord with the concerns expressed in *O'Neil* and *Gangi* courts should not allow employers to compromise the underlying policies of the ADEA by taking advantage of a superior bargaining position or by overreaching." *Id.* at 1044-45.

Unlike the ADEA, ERISA does not incorporate the enforcement provisions of the FLSA. ERISA does, however, have a similar policy of protecting employees. The Supreme Court has recently acknowledged this policy in *Pilot Life Insurance Company v. Dedeaux,* 107 S.Ct. 1549, 1551 (1987):

In ERISA, Congress set out to 'protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.' § 2, as set forth in 29 U.S.C. § 1001(b).

Because Congress' express policy in enacting ERISA is to protect participants in employee benefit plans and their beneficiaries, I would hold that, similar to release under the FLSA and ADEA, release of rights under ERISA is limited to particular circumstances such as when the case is limited to a bona fide factual dispute between the parties. As in *Gangi,* the release in the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

845 F.2d 326 (Table)
**(Cite as: 845 F.2d 326, 1988 WL 38965, \*\*6 (6th Cir.(Mich.)))**

instant case is best described as the settlement of a dispute over coverage of the Act.   Therefore, the release should be held invalid.

For the foregoing reasons, I dissent.

845 F.2d 326 (Table), 1988 WL 38965 (6th Cir.(Mich.)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works